# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

MANUEL RIVERA-NIEBLA

Defendant.

Criminal Action No. 06-07-2 (JDB)

Civil No. 13-744 (JDB)

## MEMORANDUM OPINION

Before the Court is petitioner Manuel Rivera-Niebla's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the Court will deny the motion.

## BACKGROUND

In 1994, Rivera-Niebla was convicted in the Southern District of Florida for three drug-related offenses, and sentenced to a total of 135 months of imprisonment and eight years of supervised release. See United States v. Rivera-Niebla, No. 89-309 (S.D. Fl. 1994). An alien, he was released from custody and deported in 2000. Def.'s Mot. to Vacate [ECF No. 59] ("Def.'s Mot.") 3b. Six years later, a grand jury handed down an indictment in Washington, D.C., charging him with two drug-related offenses. Indictment [ECF No. 2] ("Indictment"). He was then arrested in Colombia, and in 2008, he was extradited to the United States. Docket Entry of Jan. 7, 2008, Arrest of Manuel Rivera-Niebla. Following Rivera-Niebla's plea of guilty to one of the counts in the indictment—conspiring to import and distribute cocaine—this Court sentenced him in 2012 to 132 months of imprisonment, with credit for time served since his arrest. See July 31, 2012 Judgment [ECF No. 53].

Both the indictment and the statement of facts accompanying Rivera-Niebla's guilty plea indicated that the conduct to which he was pleading guilty occurred in 2002 and 2003. <u>See</u> Indictment at 2, 4; Statement of Facts [ECF No. 14] 2-4. Because he was under supervised release for his Florida sentence when that conduct occurred, the Court added two points to his criminal history, which bumped his criminal history category from II to III. <u>See</u> U.S.S.G. § 4A1.1(d). Rivera-Niebla, proceeding pro se, has now moved to vacate, set aside, or correct his sentence under section 2255, arguing that his counsel was constitutionally deficient for not objecting to the Court's sentencing calculations and for not moving to dismiss the indictment for improper venue.

## STANDARD OF REVIEW

Under section 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Such a motion will be granted only in limited circumstances because of the premium placed on the finality of judgments and because of the opportunities prisoners have to raise most of their objections during trial or on direct appeal. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 164 (1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."). "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." <u>Id.</u> at 166.

The defendant bears the burden of proving his claims by a preponderance of the evidence. United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973).

Even so, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." § 2255(b). But a district court need not conduct an evidentiary hearing before denying a section 2255 motion when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." Id.; accord United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996). "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal . . . ." Rules Governing § 2255 Proceedings, Rule 4(b).

## DISCUSSION

Rivera-Niebla argues only that his counsel was constitutionally ineffective. The Sixth Amendment to the United States Constitution guarantees "the right to the effective assistance of counsel," Strickland v. Washington, 466 U.S. 668, 686 (1984) (internal quotation marks omitted), and a habeas petitioner may raise an ineffective assistance of counsel claim for the first time in a section 2255 proceeding "whether or not [he] could have raised the claim on direct appeal," Massaro v. United States, 538 U.S. 500, 504 (2003). To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his lawyer performed deficiently, see Strickland, 466 U.S. at 687 (requiring showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment"), and that the petitioner was prejudiced by the lawyer's mistakes, see id. at 694 (requiring "a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceeding would have been different"). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." <u>Id.</u> at 700.

## I. RIVERA-NIEBLA'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S SENTENCING CALCULATION

Rivera-Niebla first argues that his counsel was ineffective because his counsel failed to object when the Court increased his criminal history category for committing his offense while he was under supervised release for another conviction. Rivera-Niebla advances three arguments why this was a mistake, and thus why his counsel was constitutionally deficient for failing to object. He argues that (1) his arrest did not occur until after the completion of his supervised release, (2) his deportation ended his term of supervised release, and (3) case law suggests that section 4A1.1(d) of the Sentencing Guidelines should not have applied to his case. Each argument is meritless, and so even if his counsel had objected to the Court's criminal history calculation, it would have made no difference.

Rivera-Niebla first argues that he was arrested after his supervised release ended. But section 4A1.1(d) calls for a two-point increase when a defendant "<u>committed</u> the instant offense while under any criminal justice sentence, including . . . supervised release." § 4A1.1(d) (emphasis added); <u>see also</u> <u>id.</u> app. n.4 (increase applicable "if the defendant <u>committed</u> any part of the instant offense (i.e., any relevant conduct) while under any criminal justice sentence, including . . . supervised release") (emphasis added). When he was arrested is thus irrelevant to this analysis; what matters is when he committed the offense. Both the indictment and the statement of facts accompanying Rivera-Niebla's guilty plea indicated that the conduct to which he was pleading guilty occurred in 2002 and 2003. <u>See</u> Indictment at 2, 4; Statement of Facts [ECF No. 14] 2-4. His eight-year term of supervised release began in 2000. Rivera-Niebla effectively concedes this point: he contends (erroneously) that his term of supervised release

ended in 2005. Def.'s Mot. at 3a-3c. Even if that were true, the adjustment would still apply because he engaged in the conspiracy in 2002-03. Hence, he committed the offense while under a criminal justice sentence: the supervised release imposed for his 1994 conviction.

Rivera-Niebla next contends that his deportation in 2000 ended his term of supervised release, meaning that when he committed the offense in 2002-03, he was not under any criminal justice sentence for the purposes of section 4A1.1(d). Although the D.C. Circuit has not addressed the issue, at least four circuits have held that a term of supervised release does not terminate upon deportation for purposes of applying section 4A1.1(d). See United States v. DaCruz, No. 13-2581, 2014 WL 486241, at *2 (3d Cir. Feb. 7, 2014); United States v. Roccisano, 673 F.3d 153, 157 (2d Cir. 2012); United States v. Akinyemi, 108 F.3d 777, 779 (7th Cir. 1997); United States v. Brown, 54 F.3d 234, 238 (5th Cir. 1995); see also United States v. Garcia-Castaneda, 255 F. App'x 316, 318 (10th Cir. 2007) (noting in dicta that if defendant were to reenter United States during term of supervised release, he would be subject to enhanced penalties under 4A1.1(d)). At least four other circuits have noted in dicta that supervised release does not terminate upon deportation while holding that, for section 4A1.1(d) purposes, parole or probation is not extinguished by deportation. See United States v. Barrera, 562 F.3d 899, 902 (8th Cir. 2009) (involving state probation and noting as persuasive cases holding that deportation does not extinguish supervised release); United States v. Carrasco-Mateo, 389 F.3d 239, 247 (1st Cir. 2004) (holding that state parole is not terminated by deportation and noting that the "same holds true for supervised release"); United States v. Ramirez-Sanchez, 338 F.3d 977, 980 (9th Cir. 2003) (involving probation and noting that "deportation does not extinguish supervised release"); United States v. Stewart, 208 F.3d 216 (Table) (6th Cir. 2000) (involving state parole and noting "Congress's intention that . . . supervised release continues to run despite an alien's

deportation"). In so holding, most of these courts relied on the commentary to section 4A1.1(d), which notes that "active supervision is not required for [section 4A1.1(d)] to apply." § 4A1.1(d) app. n.4. In United States v. Akinyemi, the Seventh Circuit also reasoned that because "no statute, court order, or sentencing guideline provides for the termination of the supervised release period," if the sentencing court has not exercised its authority under 18 U.S.C. § 3583 to terminate the supervised release sentence, supervised release continues even through deportation. 108 F.3d at 779. The same is true in Rivera-Niebla's case: the Southern District of Florida did not terminate his supervised release. The Court finds the reasoning of the many circuits to have considered the question to be persuasive, and holds that for the purposes of applying section 4A1.1(d), Rivera-Niebla's supervised release was not extinguished when he was deported. Hence, because he was still under supervised release in 2002-03 when he engaged in the conduct for which he was convicted, the Court properly applied the section 4A1.1(d) increase.

Rivera-Niebla also argues that the Court improperly applied the increase because the Sentencing Guidelines were amended in 2011 "to provide that the district court should not ordinarily impose a term of supervised release . . . [if] the defendant is a deportable alien who likely will be deported after imprisonment." Def.'s Mot. at 3c; see § 5D1.1(c). But even if the guidelines reflected this 2011 amendment when he was sentenced in 1994 to an eight-year term of supervised release following his imprisonment—which they did not—the Court still would have properly imposed the section 4A1.1(d) increase. Under that section, the increase applies if the defendant is actually serving a criminal justice sentence—such as a supervised release— regardless of whether that sentence was recommended under the guidelines. Hence, the 2011 amendment would not have affected the application of the section 4A1.1(d) increase to Rivera-Niebla's criminal history.

Rivera-Niebla next argues that "case law call[ed] into doubt" the application of section 4A1.1(d) to his case, and cites two cases. Def.'s Mot. at 3a-3c. In the first, <u>United States v. Mathis</u>, 216 F.3d 18 (D.C. Cir. 2000), the D.C. Circuit reversed and remanded the district court's application of the 4A1.1(d) increase: the government conceded that it did not prove by a preponderance of the evidence that the defendant was on parole at the time of his offense. <u>Id.</u> at 27. Here, the government <u>did</u> prove by a preponderance of the evidence that Rivera-Niebla was under supervised release at the time of his offense. Hence, <u>Mathis</u> does not help Rivera-Niebla. The second case Rivera-Niebla cites, <u>United States v. Brooks</u>, 708 F. Supp. 2d 23 (D.D.C. 2010), does not even involve section 4A1.1(d); instead, it addresses whether halfway house confinement counts as a sentence for the purposes of sections 4A1.1(a) and (b). <u>Id.</u> at 27. Nothing in that case bolsters Rivera-Niebla's argument.

Had Rivera-Niebla's counsel objected on any of the grounds Rivera-Niebla now raises, the Court would have overruled the objection for the reasons explained. Hence, Rivera-Niebla suffered no prejudice and his counsel was not constitutionally deficient—counsel was not obligated to raise a meritless argument. <u>United States v. Watson</u>, 717 F.3d 196, 198 (D.C. Cir. 2013) ("[C]ounsel does not perform deficiently by declining to pursue a losing argument."); <u>United States v. Kelly</u>, 552 F.3d 824, 831 (D.C. Cir. 2009) (counsel "not obliged to raise a meritless defense"). Thus, because Rivera-Niebla has not shown any prejudice due to his counsel's failure to object to his criminal history calculation, he cannot show that his counsel was ineffective under <u>Strickland</u>.

## II.    RIVERA-NIEBLA'S COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO MOVE TO DISMISS THE INDICTMENT FOR IMPROPER VENUE

Rivera-Niebla also argues that his counsel was constitutionally deficient because he did not move to dismiss the indictment for improper venue. But as with the criminal history issue,

Rivera-Niebla cannot show that he was prejudiced by his counsel's failure to move to dismiss the indictment, because no basis existed for such a motion.

The government bears the burden of proving by a preponderance of the evidence that venue is proper with respect to each count charged against a defendant. United States v. Kwong-Wah, 924 F.2d 298, 301 (D.C. Cir. 1991). Venue may be proper in more than one district. Id. In the indictment here, the government alleged that venue was proper for the conspiracy count pursuant to 18 U.S.C. § 3238 (the section under which Rivera-Niebla was charged, 18 U.S.C. § 963, does not have its own venue provision). Section 3238 provides that:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought; but if such offender or offenders are not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders, or if no such residence is known the indictment or information may be filed in the District of Columbia.

§ 3238. This provision's two clauses must be read in the disjunctive. See United States v. Gurr, 471 F.3d 144, 155 (D.C. Cir. 2006) (citing United States v. Layton, 855 F.2d 1388, 1410-11 (9th Cir. 1988), overruled on other grounds by Guam v. Ignacio, 10 F.3d 608, 612 n.2 (9th Cir. 1993)). Under the first clause, venue is proper in the district where a defendant is arrested or first brought. Under the second, if no offender is arrested or brought into any district, "an indictment or information may be filed in the district of the last known residence of the offender or of any one of two or more joint offenders," or in the District of Columbia if no such residence is known. This language provides the government with options for venue before any defendant has been apprehended: under this clause, if the "'defendant is indicted before he is brought into the United States, he may be tried in the district in which he was indicted regardless of whether it is the district in which he is first brought.'" United States v. Hsin-Yung, 97 F. Supp. 2d 24, 28 (D.D.C.

2000) (quoting Charles A. Wright & Arthur R. Miller, 2 Fed. Prac. & Proc. Crim. 2d § 304 (West 1982)). Rivera-Niebla was indicted in the District of Columbia before he was arrested in Colombia in 2006, and before he was first brought to the United States in 2008. Hence, if section 3238 applies, then venue is proper here because the indictment was filed in this district before Rivera-Niebla was arrested or first brought to the United States.[1]

Rivera-Niebla argues that because an overt act in furtherance of the conspiracy occurred in Los Angeles, California, section 3238 does not apply because his offense was not "begun or committed . . . out of the jurisdiction of any particular State or district." 18 U.S.C. § 3238; see Def.'s Suppl. Mot. to Vacate [ECF No. 63] ("Def.'s Suppl. Mot.") 2 (noting "a series of telephone calls that a co-conspirator made to his son in Los Angeles to receive a [shipment] of drugs that were available to ship to Mexico"). For its part, the government does not contest the occurrence of that overt act in Los Angeles. Thus, the relevant question is this: if an overt act took place in the United States, was the offense "begun or committed . . . out of the jurisdiction of any particular State or district"? In effect, Rivera-Niebla argues that section 3238 does not apply because the entire offense was not committed extraterritorially.

Several circuits have addressed whether, for section 3238 to apply, the entire offense must be committed extraterritorially, but the D.C. Circuit is not one of them. The Second Circuit has held that section 3238 applies only to offenses "not committed in any district," that is committed completely extraterritorially. United States v. Gilboe, 684 F.2d 235, 239 (2d Cir. 1982). But as the Third Circuit recently pointed out in United States v. Pendleton, 658 F.3d 299 (3d Cir. 2011), that holding is difficult to square with the text of the statute. Id. at 304-05. By its own terms, section 3238 applies to any offense "begun or committed" extraterritorially; by

_____

[1] Rivera-Niebla does not argue that the government should have filed the indictment in a district of his last known residence.

holding that it applies only to offenses committed entirely outside the country, the Second Circuit read the word "begun" out of the statute. Pendleton, 658 F.3d at 305. As the Ninth Circuit explained in United States v. Pace, 314 F.3d 344, 351 (9th Cir. 2002),[2] if an offense began outside of the country, section 3238 will apply; whether an offense began or was committed outside the country are two separate inquiries.

Here, it is plain that the offense began outside the United States. Rivera-Niebla nonetheless contends that even if section 3238 would have applied because his offense began outside the country, because an overt act occurred in the Central District of California, section 3238 no longer applies. This, too, is inconsistent with section 3238's text. If venue lies in one district in this country when an offense began outside the United States, but no longer lies there once it is proper in another district where an overt act occurred, venue could never lie under section 3238 for an offense begun outside the United States but completed here.[3]

Moreover, venue may be proper in more than one district. Kwong-Wah, 924 F.2d at 301. So even if venue is proper in California because an overt act occurred there, because Rivera-Niebla's offense began outside the United States, venue is also proper where the government indicted him: this district. See United States v. Erwin, 602 F.2d 1183, 1185 (5th Cir. 1979) ("That venue may also be appropriate in another district will not divest venue properly established under § 3238."). Here, Rivera-Niebla began his offense outside the country—he was residing in Mexico during the conspiracy—so section 3238 applies.

_____

[2] In Pendleton, the Third Circuit misread Pace as holding that the offense must be committed entirely outside of the country. 658 F.3d at 305. In Pace, the court explicitly analyzed whether the offense was begun or committed outside the United States, noting that "§ 3238 does not apply unless the offense was committed entirely on the high seas or outside the United States (unless, of course, the offense was 'begun' there)." 314 F.3d at 351 (emphasis added).

[3] The companion statute to section 3238, section 3237, applies when an offense is begun and completed in the United States; it says nothing about what happens when an offense is begun outside the country and completed in the United States—presumably, because section 3238 addresses that scenario. See § 3237(a).

The government also notes that some circuits apply section 3238 if a defendant's offense was "essentially foreign," and argues that Rivera-Niebla's conduct meets that test. See Pendleton, 658 F.3d at 305; United States v. Levy Auto Parts, 787 F.2d 946, 950-52 (4th Cir. 1986) (applying section 3238 when conspiracy was "essentially foreign," even though some overt acts occurred in the United States). But this inquiry focuses on whether a defendant "committed" his offense outside of the United States, not whether it began there. Because Rivera-Niebla began his offense outside the country, section 3238 applies. Thus, the Court will not opine on the propriety of the "essentially foreign" test.[4]

For all these reasons, even if Rivera-Niebla's counsel had moved to dismiss the indictment for improper venue, the Court properly would have denied that motion, and thus his failure to so move caused Rivera-Niebla no prejudice under Strickland. Thus, because Rivera-Niebla has not shown any prejudice, he cannot show that his counsel was ineffective under Strickland.

## CONCLUSION

Upon a careful review of petitioner's motion and the entire record of this criminal proceeding, the Court concludes that a hearing is unnecessary. See Morrison, 98 F.3d at 625 (where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the judge need not conduct an evidentiary hearing (quoting § 2255)). The relevant filings here establish that Rivera-Niebla is not entitled to relief under Strickland on his ineffective assistance of counsel claims, and he does not identify any information outside the

---

[4] As the government points out, Rivera-Niebla effectively concedes that his offense was essentially foreign: he states that his offense "occurred extraterritorially in Peru," that "the extraterritorial presence of my alleged co-conspirators brands the conspiracy extraterritorial in nature," and that "my alleged co-conspirators [when] the agreement was formed were entirely in Peru." Def.'s Suppl. Mot. at 1.

record that would aid the Court in evaluating his claims. <u>See</u> <u>Toms</u>, 396 F.3d at 437. Hence, the Court will deny the motion without holding an evidentiary hearing.

For the foregoing reasons, the Court will deny Rivera-Niebla's section 2255 motion. A separate order has issued on this date.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated:  <u>April 24, 2014</u>